UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROLE ANTHONY,
                                   Plaintiff,

    v.                                                    3:04-CV-734
                                                                 (LEK/GJD)
COMMISSIONER OF SOCIAL
SECURITY,
                                   Defendant.
_____

WAYNE M. CHARIFF, ESQ., Attorney for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Atorney for Defendant

## ORDER and REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

## PROCEDURAL HISTORY

This case is before this court following a final decision of the Commissioner of Social Security, dated April 23, 3004.  Administrative Law Judge ("ALJ") Joseph F. Gibbons denied plaintiff's claim on April 29, 2002 (Administrative Transcript ("T") at 13-17), and his decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 23, 2004. (T. 4).

ALJ Gibbons scheduled a hearing in this matter because the Social Security Administration determined that plaintiff was entitled to a review of her file based

1

upon the case of *Stieberger v. Sullivan*, 792 F. Supp 1376 (S.D.N.Y. 1992).  ALJ Gibbons reviewed the record in this case to determine whether plaintiff qualified for benefits for the two month time period from August 1, 1980 through September 30, 1980. (T. 578).  Plaintiff is presently receiving supplemental security income benefits and has been receiving those benefits since July of 1985.  (T. 338-343).

During 1984, plaintiff filed applications for disability insurance benefits (Title II) and supplemental security income benefits (SSI)(Title XVI).  These applications were filed on August 6, 1984 and September 4, 1984, alleging an onset date of disability of September 30, 1979.  (T. 13, 340).  At that time plaintiff alleged disability due to many physical impairments.  (T. 340, 341).  In a decision dated July 29, 1985, ALJ, James C. Johnsen found that plaintiff was disabled for the purposes of SSI, but was not disabled prior to the expiration of plaintiff's insured status on September 30, 1980. (T. 342, 343).  Pursuant to *Stieberger,* plaintiff's application for disability insurance benefits filed on September 4, 1984 was reviewed by ALJ Gibbons.[1]  (T. 14).

---

[1] *Steiberger* was a class action, brought to challenge the Social Security Administration's (SSA) policy of non-acquiescence to decisions of the Second Circuit Court of Appeals. *Steiberger* resulted in a settlement in which SSA agreed to review claims that were denied or terminated between October 1, 1981 and July 2, 1992. *See Ruano v. Commissioner of Social Security*, 02 Civ. 4528, 2003 U.S. Dist. LEXIS 1091 *3-4 (S.D.N.Y.  Jan. 27, 2003). *Steiberger* applied to claims that were denied at any level of the administrative process between October 1, 1981 and October 17, 1985 and to those claims that were denied at the ALJ or Appeals Council level between October 1985 and July 2, 1992. *Id.*  The agency agreed to review the cases in accordance with Second Circuit law.  Since plaintiff's claim for disability benefits was denied July 29, 1985, plaintiff is a member of the class, and her claim for disability benefits was reviewed by the agency.

## CONTENTIONS

The plaintiff makes the following claims: [2]

(1) Plaintiff's impairments were longstanding and chronic and existed prior to 1984. (T. 584, 576, 577).

(2) Based upon the report by Dr. Fras, (T. 327), which states plaintiff's mental condition as of 1984, plaintiff was disabled prior to 1980. (T. 583, 576).

Plaintiff argues that she was disabled prior to the expiration of her insured status on September 30, 1980. (T. 581-584, 576) and that this case should be reversed for calculation of benefits..

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any

---

[2] No formal brief was filed by plaintiff's attorney of record, however the attorney's comments are stated in the record on pages 581-584. (T. 581-584). In addition, the record contains a letter from plaintiff asserting errors by the ALJ which are similar to the arguments at the hearing of January 18, 2002. (T. 576).

3

> other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**1.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

4

whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.

5

However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2.  **Nonmedical Evidence and Testimony:**

Plaintiff was 50 years old at the time of the hearing in January 2002. (T. 489). She has four children and during the year 2000 was living with her 13 year old daughter. (T. 449, 489). Plaintiff has a bachelor's degree in education and some post-graduate courses in sociology and education. (T. 489). Records indicate that plaintiff had various secretarial jobs including working in law firms and for a newspaper as a "commercial artist" (T. 193-198).

## 3.  **Medical Evidence:**

Plaintiff was hospitalized in Binghamton General Hospital from September 21, 1980 until October 7, 1980 for abdominal pain. Multiple medical tests were performed and plaintiff's condition was reviewed by many different specialized physicians.[3] (T. 248, 249). The test results were essentially normal. An x-ray of plaintiff's lumbar spine showed moderately severe scoliosis of the lower dorsal spine, but there was no evidence of fracture or dislocation, and the intravertebral spaces were "essentially well-preserved." (T. 257).

The discharge summary for plaintiff's 1980 hospitalization stated that plaintiff

---

[3] The court notes that only the doctor's last names are written in the medical records.

was examined by Dr. Miklashek, who noted plaintiff's scoliosis, and stated that plaintiff had weakness in her right hand. (T. 249). Dr. Miklashek also stated that plaintiff had fallen several weeks before and had an injury to her right forearm and coccyx. (T. 249). Dr. Miklashek did not find "any significant psychiatric disorder." (T. 249). Plaintiff was examined by Dr. Kim "for orthopedics", who stated that she had moderate ideopathic scoliosis, and doubted that the pain that she was feeling in her lower right thoracic area was secondary to her scoliosis. (T. 249). Dr. Kim found weakness in the right upper extremity. A bone scan was done, showing some cervical arthritis, but was otherwise unremarkable. (T. 349).

Plaintiff was also examined by Dr. Ribner who stated that plaintiff's motor strength was good in all extremities, and other than her scoliosis, there was no evidence of focal neurological deficits. (T. 249). EMG studies of all the muscle groups in her upper extremities were normal. (T. 249). Plaintiff's discharge diagnosis was abdominal pain, probably secondary to a spastic colon; moderately severe scoliosis of the thoracic spine; urinary retention of unknown etiology; and probable carpal tunnel syndrome of the right wrist. (T. 248).

It was not until after a motor vehicle accident during July 1984 (T. 217) that plaintiff was diagnosed as having a severe contusion of her lumbar spine and an examination at that time showed muscle spasms and mild degenerative changes in her lumbar spine plus scoliosis. (T. 217, 218). From that point during mid-1984 the record contains extensive and exhaustive medical treatments and hospitalizations for surgery mostly related to plaintiff's back problems. Plaintiff attended physical

therapy during 1984 (T. 221-225) and continued to have back problems during late 1984.  (T. 231, 232).  A neurologist, Dr. Kuper, believed that plaintiff had a muscle strain of her abnormal spine, but that surgery was not necessary at that time.  (T. 232-234).  Plaintiff was treated throughout 1985 for continuing back problems (T. 238-248).

Plaintiff's back condition progressively became worse and she had surgery on her back in 1989 (T. 400-402) and again during 1991.  (T. 425-428, 434-439).  A long-time treating physician, Dr. Galen Graham stated during November 1991 that plaintiff had multiple medical disabilities related to her spine  (T. 467) and that her diagnosis included progressive and degenerative osteoarthritis of her spine with progressive scoliosis.  (T. 467).  Dr. Graham issued a similar opinion during 1996 when he stated that plaintiff's severe scoliosis with secondary arthritis was "***slowly getting worse with time***." (T. 448)(emphasis supplied).  The very next month, during August 1996,  plaintiff was examined by an independent orthopedic physician, Dr. Kochersperger who confirmed plaintiff's marked scoliotic deformity in her thoracic and lumbar spine.  Dr. Kochersperger stated that plaintiff had severe scoliosis plus a cervical syndrome with radiculitis.  (T. 453).

The record shows that since her automobile accident in July ***1984*** plaintiff has experienced a steady deterioration of her physical and mental health requiring two surgeries and multiple hospitalizations.  The record contains reports from other physicians and psychologists during 1991 (T. 405), 1992 (T. 410), and 1996 (T. 449) that confirm plaintiff's severe physical and mental impairments.

## 4.   ALJ Johnsen's Opinion of July 29, 1985

ALJ Johnsen issued an opinion on July 29, 1985 (T. 339-343). ALJ Johnsen reviewed all of the medical evidence, plaintiff's physical problems, (T. 431), and plaintiff's mental problems. (T. 342).[4] He found that plaintiff had somatiform disorder (a mental impairment); chronic pain syndrome; and congenital scoliosis of the lumbar spine. (T. 342). He found that plaintiff was disabled beginning July 13, 1984 and awarded her SSI benefits based on that finding. (T. 342-43).

ALJ Johnsen also found, however, that the medical evidence was insufficient to establish that plaintiff's disability began prior to the expiration of her insured status on September 30, 1980. (T. 342). ALJ Johnsen found that plaintiff could perform her past relevant work prior to September 30, 1980. Thus, the ALJ found that plaintiff was not entitled to disability insurance benefits. (T. 342).

## 5.   ALJ Gibbons's Decision

As stated above, because the denial of plaintiff's disability insurance benefits was decided by ALJ Johnsen on July 29, 1985, plaintiff became a member of the *Steiberger* class. Therefore, the denial of plaintiff's case was automatically reviewed. ALJ Gibbons reviewed the record and issued his decision, denying benefits. ALJ Gibbons found that as of October of 1980, plaintiff had only "sporadic treatment" for musculoskeletal pain due to her scoliosis. (T. 14).

ALJ Gibbons found that all the exacerbation of plaintiff's symptoms occurred subsequent to October of 1980. She did not start using a cane until the "late 1980's,"

---

[4]The decision refers to Ivan Kras (sic M.D.). (T. 342). The doctor's name is Ivan Fras. (T. 327).

9

and she did not undergo surgery for a cervical disc herniation until 1989. (T. 14). ALJ Gibbons further found that plaintiff was not referred for counseling for anxiety and depression until September of 1981. (T. 14).

Although plaintiff's attorney argued to ALJ Gibbons that plaintiff's scoliosis was "just as severe" prior to the date that plaintiff was last insured, ALJ Gibbons found that the record did not contain any evidence that plaintiff had sought treatment for pain associated with the scoliosis until plaintiff's automobile accident in 1984. Plaintiff's attorney also argued that plaintiff's mental impairment was just as severe prior to the expiration of her insured status, however, there was no medical evidence of plaintiff's psychiatric impairment prior to 1981.

In November of 1981, Dr. M. Glosinger wrote a medical report, stating that "plaintiff was diagnosed in October as having major depression with a generalized anxiety disorder", but that at the time of his examination, she appeared "to be considerably less depressed" and she was no longer having difficulty concentrating or having feelings of hopelessness. (T. 287, 289).

The record does not contain any evidence to support plaintiff's claim that she was unable to perform substantial gainful activity prior to September 30, 1980.  In a response to a Social Security Administration questionnaire during June 1996, plaintiff specified numerous longstanding medical conditions which she believes she has, in addition to new conditions that had recently developed.  (T. 359).

The record does not show any type of extensive medical treatment prior to 1984 other than visits to a chiropractor during 1976 and 1980 (T. 244) and a

hospitalization during October 1980 for abdominal pain which was believed to be caused by a spastic colon. (T. 248, 250-251).

ALJ Gibbons found that plaintiff had the residual functional capacity to perform a full range of sedentary work. (T. 16). Because plaintiff's prior work as a commercial artist and secretary was sedentary, ALJ Gibbons found at step 4 of the five-step evaluation that plaintiff could have returned to her prior work. (T. 16). ALJ Gibbons' decision of April 29, 2002 (T. 13-17) is fully supported by substantial evidence in the record and accurately concludes that plaintiff's scoliosis was not severe enough to prevent her from engaging in sedentary work through September 30, 1980. Based upon a review of this extensive record, this court finds the Commissioner's decision is supported by substantial evidence and the denial of Title II disability insurance benefits should be affirmed.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED**, and it is further

**ORDERED**, that the clerk telephone attorney Chariff's office to obtain plaintiff's current address and then mail a copy of this Report-Recommendation directly to plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d

85 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 9, 2007

                                                Hon. Gustave J. DiBianco
U.S. Magistrate Judge